U.S. COURTS

05 SEP 22 PM 1:07

UNITED STATES DISTRICT COURT

DISTRICT OF IDAHO

| UNITED STATES OF AMERICA, | ) | |
|---|---|---|
| Plaintiff-Respondent, | ) | NOS. CR-00-0134-WFN |
| | ) | CV-04-239-N-EJL |
| -vs- | ) | |
| | ) | MEMORANDUM OPINION |
| JENNIFER McCLELLAND, | ) | RE: ORDER VACATING |
| | ) | CONVICTION AND SENTENCE |
| Defendant-Movant. | ) | |

Pending before the Court is Jennifer McClelland's Motion to Vacate Her Conviction and Sentence, filed pursuant to 28 U.S.C. § 2255. Ms McClelland is represented by Nedra Ruiz of San Francisco, CA. Assistant United States Attorney Nancy D. Cook represents the Government.

Ms. McClelland claims that she received ineffective assistance of counsel because her trial attorney, Douglas Phelps, failed to present certain exculpatory evidence at trial. She further contends that her Sixth Amendment rights were violated because her trial counsel was burdened by an actual conflict of interest.

Ms. McClelland's first claim is based for the most part on an affidavit that Ms. Ruiz obtained from John Scrivner, the fire expert for the defense. In the affidavit, Mr. Scrivner states that after the first trial he informed Ms. McClelland's trial counsel that he should perform additional investigation and retain the services of a laboratory to prove that the fire could not have started in the manner posited by the Government. The Court determines that Ms. McClelland cannot prevail on this argument because she cannot demonstrate prejudice.

ORDER - 1

*See Strickland v. Washington*, 466 U.S. 668, 691 (1984)("In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments.").

As to Ms. McClelland's second claim, the Court granted an evidentiary hearing on the following issues: (1) Whether an actual conflict of interest existed in Douglas Phelps' simultaneous representation of Ms. McClelland and potential witness, Norma Holstrom; and (2) If so, whether Ms. McClelland waived her right to conflict-free representation. On September 15, 2005, the Court heard testimony from Douglas Phelps, Dan White, and Roland Watson. After argument by counsel, the Court ruled that Ms. McClelland's Sixth Amendment right to effective assistance of counsel was violated by Mr. Phelps' simultaneous representation of Ms. McClelland and Norma Holstrom. This memorandum opinion is entered to memorialize and supplement the rulings of the Court.

I. **BACKGROUND**

On October 17, 2000, Ms. McClelland was indicted in a four count indictment which charged mail fraud and using fire to commit a felony, in violation of 18 U.S.C. §§ 1341, 1342, and 844(h). Her first trial, which commenced on March 19, 2001, resulted in a mistrial. A second jury trial commenced on April 17, 2001, and on April 26, 2001, that jury found Ms. McClelland guilty of all four counts. On July 25, 2001, Ms. McClelland was sentenced to 144 months of imprisonment, 3 years of supervised release, and a $400 special penalty assessment. Ms. McClelland was represented by Douglas Phelps throughout the pendency of these proceedings.

Ms. McClelland claims that Mr. Phelps labored under an actual conflict of interest due to his simultaneous representation of witness Norma Holstrom. At trial, Mr. Phelps sought to call Ms. Holstrom as a witness to corroborate Ms. McClelland's claim that ATF Agent Lance Hart used coercive techniques to obtain a statement. However, before Ms. Holstrom was called to the stand, AUSA Cook asked the Court to inform Ms. Holstrom of

ORDER - 2

her Fifth Amendment rights as active charges were pending against Ms. Holstrom. Ms. Holstrom apparently would have testified that Agent Hart, who was the investigating agent in both Ms. Holstrom's and Ms. McClelland's case, coerced her (Ms. Holstrom) into giving a statement in her pending arson case. (Ct. Rec. 69).

The Court conducted the following colloquy with counsel:

MS. COOK: I am going to ask that the Court admonish Miss Holstrom of her rights.

THE COURT: Fifth Amendment rights?

MS. COOK: Yes.

THE COURT: Do you think, Mr. Phelps, that she would be talking about matters that could incriminate her? I thought she was just going to be quoting what agent Hart told her?

MR. PHELPS: Well, Judge, you know, if I may explain just a little bit. Miss Holstrom and I have talked about that it has been fully disclosed to her by myself and associates in my law firm and actually in State Court she has done an affidavit saying that we have discussed all that and I think she gave testimony too, and I don't disagree with counsel, she should be read her rights.

Additionally, and I have also explained to her, Your Honor, that I didn't know how you would handle this and what I did was tell her was that the Court might very well limit her testimony to simply allow her to say were promises made to you by the agent, yes or no, and that that might be all that she was allowed to testify about, or the Court might allow her to testify further and I didn't know how Your Honor would rule on that.

And I also explained to her that if that happened, then she might be cross-examined about some of the substance of her case and that sort of thing, and she is aware of that, and even with that, she wanted to come in and testify in this case.

My concern is, and as I explained to her, we might end up having three trials in one and that wouldn't be great for anybody, but I know it is up to the Court.

THE COURT: Well, it is difficult for me to rule what she can testify to because I haven't heard her testimony. Does she have her own counsel?

MR. PHELPS: Your Honor, I represent her in that matter also and we have gone over that.

THE COURT: That is a conflict.

ORDER - 3

MR. PHELPS: That is a conflict. The conflict has been disclosed and we have addressed that issue in State Court where she is represented.

THE COURT: I know it is a problem here because you are aggressively representing the defense of Miss McClelland and you are trying to put on evidence that another client and her testifying may be -- result in an adverse result to her. That is an absolute conflict. I don't think we can countenance that.

MR. PHELPS: I don't know, all I can tell you is what we have dealt with at the State Court level and the Judge there ruled that if it was disclosed and she accepted it, that that was acceptable.

THE COURT: It is not acceptable here.

MR. PHELPS: All right, I understand, Your Honor.

THE COURT: It is just not, because that is just fraught with so much danger that I think everybody can understand that, but if you limit the direct just to whether or not there was a promise made without going beyond that at all into the nature of the conduct of whatever it is that got her here, that might be a way to limit, but --

MR. PHELPS: And again, as I explained to the Court, I didn't know exactly what the Court will allow in either of these people's testimony, and I explained to her that that might be the way the Court would rule otherwise.

THE COURT: I think the very least though, she should have independent counsel though, Mr. Phelps.

MR. PHELPS: I could -- she was represented by another attorney.

THE COURT: I point out even the fact that she is called by you to help you defend Miss McClelland puts her at risk which is potentially very adverse to her position.

MR. PHELPS: I understand that, Judge.

THE COURT: Particularly in view of the fact apparently, I don't even know the status of the case, but I gather from what you say, she hasn't been convicted yet, she hasn't pled.

MR. PHELPS: We are planning on trying that case at some future date, yes, Your Honor.

HE COURT: I just don't think she should be called unless she has independent counsel.

MR. PHELPS: All right. I will talk with her about that.

....

ORDER - 4

THE COURT: Without her having independent counsel and being fully advised, I don't think she should be called as a witness.

MR. PHELPS: All right. Perhaps we will have time for that and go from there.

Ms. Holstrom did not testify, and on April 26, 2001, the jury convicted Ms. McClelland on all four counts.

## II. EVIDENTIARY HEARING

At the evidentiary hearing, the Government called Douglas Phelps, Roland Watson, and Dan White. The Movant's sole witness was Jennifer McClelland.

Mr. Phelps testified he discussed the conflict of interest with both Ms. McClelland and Ms. Holstrom. He further testified that he advised Ms. McClelland to consult with attorney Roland Watson regarding the conflict issue. During Mr. Phelps' testimony, the Government proffered exhibit # 1, which is an affidavit that Jennifer McClelland signed on April 19, 2001 (hereinafter "the affidavit"). The affidavit was filed by Mr. Phelps in the state court case involving Norma Holstrom. In it, Ms. McClelland acknowledges that Mr. Phelps discussed with her a "potential conflict of interest" which could arise from Mr. Phelps' dual representation of Ms. McClelland and Ms. Holstrom. On cross-examination, Mr. Phelps admitted that nowhere in the document did the words "actual conflict of interest" appear. In addition, in the "Memorandum in Opposition to Plaintiff's Motion to Disqualify Defendant's Attorney," which was also filed in the Holstrom case, Mr. Phelps' firm argued that "no actual conflict exists." Ct. Rec. 142, Attachment 1. Mr. Phelps also admitted that he did not advise the Court of the conflict of interest at any time prior to calling Ms. Holstrom to the stand.[1]

---

[1] There was some evidence that an *in camera* discussion regarding the conflict of interest issue may have taken place; however, there is no record of the discussion and none of the parties could say with certainty whether the meeting took place before Ms. Holstrom was called to the stand. It was undisputed that the Defendant, Ms. McClelland, was not present at that discussion.

ORDER - 5

Roland Watson testified that he *vaguely* recalled consulting with Ms. McClelland regarding the conflict of interest issue. Mr. Watson further testified that he knew Ms. McClelland socially prior to representing her on any legal matter. He considered Ms. McClelland to be a bright individual and did recall that Ms. McClelland wanted Ms. Holstrom to testify in her defense.

The Government's final witness, Dan White, testified that he assisted Mr. Phelps during both of Ms. McClelland's trials. He also *generally* recalled conversations between Mr. Phelps and Ms. McClelland regarding a potential conflict of interest, and that Ms. McClelland wanted Ms. Holstrom to testify in her defense. Mr. White also confirmed that after the colloquy the Court conducted with counsel, Mr. Phelps advised Ms. Holstrom that she was not going to be allowed to testify. Mr. White could *not* recall whether Mr. Phelps advised Ms. Holstrom that if she (Ms. Holstrom) obtained independent counsel, she would be allowed to testify in the McClelland trial.

The Movant, Jennifer McClelland, testified on her own behalf. Ms. McClelland stated that the first time Mr. Phelps showed her Government's exhibit #1 (the affidavit) was when Mr. Phelps gave it to her to sign during a recess at her second trial. Mr. Phelps told Ms. McClelland that Norma Holstrom had crucial testimony to give in her matter, and that she needed to sign this document so that Ms. Holstrom would be allowed to testify. Ms. McClelland testified that she did not have the opportunity to discuss the affidavit with Roland Watson nor did she understand the inherent conflict of interest that was created by Mr. Phelps' representation of both her and Ms. Holstrom.

### III. DISCUSSION

#### A. Ineffective Assistance of Counsel - General Rule

A movant may prove ineffective assistance of counsel by demonstrating that: (1) counsel's performance fell below an objective standard of reasonableness; and (2) prejudice resulted. *Strickland v. Washington*, 466 U.S. 668, 687-92 (1984). The *Strickland* standard

1  of effective assistance of counsel applies both to retained and appointed counsel. *Cuyler*
2  *v. Sullivan*, 446 U.S. 335, 344 (1980).

3  There are two components to reasonable performance: competence and conflict-free
4  representation. *Garcia v. Bunnell*, 33 F.3d 1193, 1195 (9th Cir. 1994). A defendant can
5  proceed under one or both theories. If the defendant is alleging that his counsel was
6  incompetent, he or she must show that "the deficient performance prejudiced the defense."
7  *Strickland*, at 687. "This requires showing that counsel's errors were so serious as to
8  deprive the Defendant of a fair trial, a trial whose result is reliable." *Id*.

9  In a conflict case, on the other hand, the rule is altered. Where the conflict of interest
10 is raised at trial and the court "fail[s] either to appoint separate counsel or to take adequate
11 steps to ascertain whether the risk [is] too remote to warrant separate counsel," a conviction
12 will be reversed and the prejudice prong of the *Strickland* effective assistance of counsel
13 standard will be presumed. However, where the defendant did not raise an objection at
14 trial, the conflict of interest must also have "adversely affected his lawyer's performance."
15 *Cuyler*, at 348.

16     B. <u>Was There an Actual Conflict of Interest that Adversely Affected Counsel's Performance?</u>
17

18 At the outset, the Court notes that this case appears to fall somewhere in-between the
19 rules announced in *Holloway* and *Cuyler*. In the matter *sub judice*, the conflict issue was
20 raised, but neither Ms. McClelland nor Mr. Phelps formally objected to Mr. Phelps' staying
21 on as her counsel. Nevertheless, the Court need not reach this issue because the Defendant
22 has met the higher standard of *Cuyler*. *Cuyler*, at 348-50; *see also Lockhart v. Terhune*,
23 250 F.3d 1223, 1231 (9th Cir. 2001)(The central question is what the advocate found
24 himself compelled to refrain from doing because of the conflict.).

25 The Court determined at trial that it was a conflict of interest for Mr. Phelps to
26 simultaneously represent Ms. McClelland and Ms. Holstrom. Because Mr. Phelps

ORDER - 7

represented both Ms. Holstrom and Ms. McClelland, Mr. Phelps was compelled into the choice of calling Ms. Holstrom as a witness (to vigorously defend Ms. McClelland) or to decline to call Ms. Holstrom (to protect Ms. Holstrom's Fifth Amendment rights). Thus, Ms. McClelland has demonstrated that an actual conflict of interest adversely affected her lawyer's performance.

C. Was there a Valid Waiver?

Once the Defendant demonstrates an actual conflict of interest, the Court must then determine whether there was a valid waiver. A criminal defendant may waive his or her right to conflict-free representation. *Holloway v. Arkansas*, 435 U.S. 475, 483 n. 5. The waiver must be voluntary, knowing, and intelligent, such that the defendant is informed of the consequences of her choice. *Lockhart v. Terhune*, 250 F.3d 1223, 1232-33 (9th Cir. 2001). The Court must "indulge every reasonable presumption against the waiver of fundamental rights," and must focus on what the defendant actually understood. *Id.* at 1232-33 (*citing Glasser v. United States*, 315 U.S. 60, 70 (1942)). The defendant's choice to waive his or her Sixth Amendment rights "must be made with eyes wide open." *Id.* at 1233.

The Court also recognizes that it has an affimative duty of inquiry whenever it knows or reasonably should know that a particular conflict may exist. *Lockhart*, 250 F.3d at 1229 (citations omitted). If an actual conflict is found, the Court must inform the defendant of the conflict and his or her right to conflict-free representation. *Garcia v. Bunnell*, 33 F.3d 1193, 1199 (9th Cir. 1994). The Court should then engage in a neutral inquiry and discuss the possibility of waiver. *Id.*

The Government argues that the affidavit of Ms. McClelland and the testimony of Mr. Phelps, Mr. Watson, and Mr. White demonstrate that Ms. McClelland knowingly and intelligently waived the conflict. The Court disagrees. Mr. Phelps' contention that he discussed the "actual" conflict of interest with Ms. McClelland, as well as the consequences

ORDER - 8

of that conflict, is contrary to the documentary evidence of record. First, the affidavit clearly refers to a "potential" as opposed to an "actual" conflict of interest. Second, the affidavit was prepared with *Ms. Holstrom's* rights in mind, as the purpose of that document was to satisfy the concerns that had been raised in state court concerning Mr. Phelps' dual representation of Ms. Holstrom and Ms. McClelland. The affidavit only informed Ms. McClelland of the potential conflict that could arise if she was called to testify in Ms. Holstrom's case; it does not inform Ms. McClelland of the fact that the conflict of interest could affect Ms. Holstrom's ability to testify in Ms. McClelland's case. Finally, the Court finds particularly compelling the fact that memorandum of authorities submitted by Mr. Phelps' firm in Ms. Holstrom's case unequivocally states that "no actual conflict exists." Ct. Rec. 142, Attachment 1 (emphasis added).

The Court also finds credible the testimony of Ms. McClelland that she was provided with the affidavit during a recess in her criminal trial. The affidavit is dated April 19, 2001, which the record demonstrates was the third day of Ms. McClelland's federal trial. The affidavit is also notarized by Mr. Phelps. The timing of the document supports Ms. McClelland's testimony that she did not have the opportunity to review this document with an independent attorney.

Moreover, the Court recognizes that it must accept some responsibility for the constitutional violation in this matter. The Court was first advised on the conflict of interest when Ms. Holstrom was preparing to take the stand. The record shows that the Court made an inquiry regarding Mr. Phelps' representation of Ms. Holstrom and determined that Ms. Holstrom should have independent counsel in order to testify. What is lacking from the record, however, is any showing that the Court fulfilled its affirmative duty to engage in a neutral inquiry with Ms. McClelland and inform her right to conflict-free representation.

For all the foregoing reasons, the Court finds that while Ms. McClelland is of average intelligence, she did not understand that Mr. Phelps was laboring under an actual conflict

ORDER - 9

of interest nor the consequences of her choice. Ms. McClelland therefore could not knowingly and intelligently waive her right to conflict-free representation.

## IV. CONCLUSION

The Court grants Ms. McClelland's petition to vacate her conviction and sentence. Ms. McClelland is entitled to a new trial, a scheduling order shall follow in due course.

*IT IS SO ORDERED.*

The Clerk of Court is directed to file this Memorandum Opinion and provide copies to counsel.

**DATED** this 22 day of September, 2005.

09-20

```
                            WM. FREMMING NIELSEN
                    SENIOR UNITED STATED DISTRICT JUDGE
```

ORDER - 10